**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| THOMAS KENNEDY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. |

**EXPEDITED MOTION FOR RETURN OR DESTRUCTION OF PROPERTY PURSUANT TO FED. R. CRIM. P. 41(g) AND REQUEST FOR EXPEDITED HEARING**

Pursuant to Federal Rule of Criminal Procedure 41(g) ("Rule 41(g)"), Thomas Kennedy, by and through counsel, files this Motion for the Return or Destruction of Property, based on U.S. Customs and Border Protection's ("CBP") unlawful seizure of Plaintiff's smartphone on September 6, 2026 at Miami International Airport. Plaintiff requests that the Court order the return or destruction of any and all data that CBP extracted, copied, or retained from his smartphone and from any remote accounts that CBP accessed between September 6, 2026 and the present.

Plaintiff is a long-time social justice and immigrants' rights activist and organizer. His smartphone and online accounts contain highly sensitive, confidential, private, and privileged information, including privileged attorney-client communications and work products, confidential news source information, and method and strategy information related to immigrants' rights campaigns and investigations in Florida and nationally. Plaintiff's U.S. passport was flagged at U.S. customs upon return from an international flight into Miami International Airport following a vacation. Without justification or reasonable suspicion, Defendant detained Plaintiff, seized his

smartphone, and, upon information and belief, extracted its contents. Defendant's actions violated the First Amendment, Fourth Amendment, CBP policy, and federal statutes. So long as Defendant retains Plaintiff's private, confidential, and privileged data, Defendant continues to aggrieve Plaintiff. Rule 41(g) dictates the immediate return or destruction of all copies of the seized data.

**REQUEST FOR HEARING**

With this expedited motion, Plaintiff respectfully requests an expedited hearing under Local Rule 7.1(b)(2). Plaintiff suffers ongoing irreparable harm due to CBP's retention of attorney-client privileged and work-product protected documents, confidential news source information, confidential internal policy strategizing and campaign communications and documents, and highly sensitive immigration and personal information. There is no identifiable pending criminal or civil investigation or action against Plaintiff. Defendant has made no showing as to why they seized Plaintiff's smartphone, extracted its data, or continue to retain its data. Plaintiff's harm is compounded the longer Defendant retains his data. Plaintiff therefore seeks expedited consideration and the immediate return or destruction of the data that Defendant unlawfully retains.

**FACTUAL BACKGROUND**

Plaintiff is a naturalized U.S. citizen from Argentina and a Miami resident. He is a very public-facing immigrants' rights advocate and a Policy Consultant at the Florida Immigrant Coalition ("FLIC"). He is a PhD student at Florida International University, studying immigration and surveillance. Plaintiff is very active on social media, where he posts opinions and articles related to ongoing immigrants' rights campaigns and national and international policy issues. Plaintiff currently has 94,000 followers on X and 24,000 followers on Instagram. In addition to

social media, Plaintiff is regularly interviewed by European, Latin American, as well as U.S. national and local Florida news outlets, on immigration policy issues. Plaintiff engages in op-ed journalism, political activism, and policy campaigns in both a personal and professional capacity. *See* Exhibit A, Declaration of Thomas Kennedy ("Kennedy Decl."), ¶¶ 2-3.

At FLIC, Plaintiff works on several advocacy campaigns, including multiple campaigns seeking to close or prevent the construction of immigration detention centers in Florida; legislative policy campaigns seeking to end Section 287(g) agreements between U.S. Immigration and Customs Enforcement ("ICE") and local police; and other state and local immigrants' rights policy campaigns. Plaintiff organizes and speaks at press conferences around immigrants' rights and unlawful detention. He participates in several advocacy coalitions that discuss ongoing immigrants' rights research and policy, political organizing work, and campaign coordination and strategy. Kennedy Decl., ¶ 4.

Through his work at FLIC, Plaintiff communicates directly with the families of detained and undocumented immigrants to coordinate legal support on behalf of the Community Justice Project ("CJP"), a Miami-based nonprofit law firm. Kennedy Decl., ¶¶ 6-7, 24. He collaborates with CJP on lawsuits challenging unlawful immigrant detention centers in Florida and most recently worked on a lawsuit against "Alligator Alcatraz," the highly publicized detention center in South Florida. Kennedy Decl., ¶ 5. Plaintiff took an active role in developing lawsuits challenging detentions at Alligator Alcatraz, particularly by connecting attorneys with potential plaintiffs. His communications with FLIC and CJP clients contain highly sensitive and confidential information. Kennedy Decl., ¶ 6. All of these communications and documents are stored in Plaintiff's phone, either in Signal, WhatsApp, Slack, or Telegram messages, Google emails, or

email attachments. At the time his phone was seized, Plaintiff was logged in to all of his social media, text messaging, and email accounts. Kennedy Decl., ¶¶ 7, 24.

This is not the first time Plaintiff has been targeted and harassed due to his organizing work and political speech. In 2021, because of his political activism, Plaintiff was being surveilled and barred from Governor DeSantis' press conferences by the Miami-Dade Police Department; in response, Plaintiff sued the Governor in 2022 for First Amendment and Fifth Amendment constitutional violations. Kennedy Decl., ¶ 25.

**September 6, 2026 Phone Seizure at Miami International Airport**

Plaintiff recently traveled for pleasure to Turkey and Egypt for 10 days. He flew back home into Miami International Airport ("MIA") from Istanbul on September 6, 2026. After arrival, at or around 9:30 pm, Plaintiff presented his U.S. passport to the U.S. customs kiosk scanner. The scanner flagged Plaintiff, and he was unable to proceed through customs. A CBP agent approached Plaintiff and instructed him to come with him for secondary inspection.

Plaintiff asked the agent why he was being detained. The agent responded that CBP had the right to detain him at the port of entry. Plaintiff asked again, informing the agent that he is a U.S. citizen, and asking why he was being detained. The agent curtly replied that he did not have provide that information. The agent left Plaintiff in a waiting area. Shortly thereafter, a CBP agent brought Plaintiff into a smaller private room to conduct an interrogation. The agent questioned Plaintiff about the purpose of his trip, his books and magazines, and his work. The agent seized Plaintiff's books, magazines, and phone during the inspection. Plaintiff has reason to believe that the agent copied the contents of his phone and his printed materials.

The interrogation, as recalled by Plaintiff, is detailed below. Kennedy Decl., ¶¶11-22:

After taking Plaintiff into a smaller interrogation room, one of the agents asked him, "Why were you traveling?" and "Why were you there?" Plaintiff explained he was on vacation. The agent then asked, "What do you do for a living?" Plaintiff did not provide information about his work, other than that he worked at a nonprofit. At this point, the agent tried to ask Plaintiff more questions about his profession, but Plaintiff did not answer. The agent then asked for Plaintiff's phone. Plaintiff refused. The agent told Plaintiff he had to give him the phone, and Plaintiff still refused.

The agent then left the room and returned with another agent. The agents took Plaintiff to another room with a large table and instructed Plaintiff to place his luggage on the table. The agents then meticulously inspected the contents of Plaintiff's bags, examining every item, inside and out. Included in Plaintiff's luggage were the books The Palestine Laboratory: How Israel Exports the Technology of Occupation Around the World and King of Kings: The Iranian Revolution: A Story of Hubris, Delusion and Catastrophic Miscalculation and vintage Egyptian Arabic language magazines.

Picking up King of Kings, one of the agents asked, "What is this book and why do you have it?" and "Why is there a U.S. and Iranian flag on it?" Plaintiff refused to provide information about his books. The agent then picked up Plaintiff's magazines and asked, "Why do you have these pamphlets?" Plaintiff told the agents they were magazines, not pamphlets, and he bought them because they looked cool. The agent collected the books and magazines and left the room with them. When he returned, he did not have the materials with him.

The other agent then said to Plaintiff, "Okay we are going to need your phone." Plaintiff refused. The agent replied, "If you don't give us your phone, we're going to retain it indefinitely and [something to the effect of] your questioning will take longer." Fearing a protracted detention

and possible long-term confiscation of his phone, Plaintiff ultimately handed the agent his phone.

The agent who had taken the reading materials continued questioning: "What is it you do for a living?"; "Are you some kind of immigration lawyer?"; "Is there anything on your phone that could be attorney-client privileged?" Plaintiff responded that his phone very likely contained privileged data. The agent asked no follow-up questions. Overall, the detention lasted approximately two hours. The agents returned with Plaintiff's belongings and told him he could leave.

On September 17, Plaintiff's counsel sent a letter via email to the CBP Assistant Chief Counsel of CBP's Miami sector and to the Fines, Penalties, & Forfeitures ("FP&F") office at MIA, demanding that CBP return or destroy the data it copied from Plaintiff's phone. *See* Plaintiff's demand letter, attached hereto as Exhibit B. Plaintiff received a reply email on September 17 from an FP&F technician requesting a case number, which Plaintiff was never provided. Plaintiff's counsel sent two additional emails on September 17 and 21 and left voicemails with the FP&F office on September 21 and September 22. As of the time of filing this motion and despite Plaintiff's efforts, Defendant has not substantively responded to Plaintiff's demand letter, nor have they indicated that they will return or destroy the data extracted from his phone.

## ARGUMENT

### I. Plaintiff is entitled to the immediate return or destruction of all data extracted from his phone during the September 6, 2026 seizure.

This Court has jurisdiction to grant Plaintiff relief under Fed. R. Crim. P. 41(g) ("Rule 41(g)"). Rule 41(g) defines property to include information, such as electronically stored information. Fed. R. Crim. P. 41(a)(2)(A), (b), (e). A motion for the return of property under Rule 41(g) made outside of pending criminal proceedings is treated as a civil equitable proceeding.

*United States v. Martinez*, 241 F.3d 1329, 1331-32 (11th Cir. 2001) (collecting cases); *Hunsucker v. Phinney*, 497 F.2d 29 (5th Cir. 1974). In addition to the return of the property itself, "equitable considerations might justify an order requiring the government to return or destroy all copies of records that it has seized." Fed. R. Crim. P. 41 (advisory committee's notes to 1989 amend.); *Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 600 (5th Cir. 2021) (holding plaintiff's injury "can only be made whole by the government returning and destroying its copies of the privileged material"); *Richey v. Smith*, 515 F.2d 1239, 1242 n.5 (5th Cir. 1975) ("[A] plaintiff in a civil action for the return of property has a sufficient proprietary interest in copies of documents which have been seized to demand their return[.]").

A District Court in the Eleventh Circuit exercises jurisdiction over Rule 41(g) motions in "exceptional" and "anomalous" circumstances. *Trump v. United States*, 54 F.4th 689, 694 (11th Cir. 2022) (citing *Hunsucker*, 497 F.2d at 32).[1] To determine whether to exercise Rule 41(g) equitable jurisdiction and order relief, courts considers four factors: (1) the government displayed a callous disregard for the plaintiff's constitutional rights; (2) the plaintiff has an individual interest in and need for the material whose return he seeks; (3) the plaintiff would be irreparably injured by denial of the property's return; and (4) the plaintiff has an adequate remedy at law for the redress of his grievance. *Trump*, 54 F.4th at 697 (citing *Richey*, 515 F.2d at 1243-44). Plaintiff satisfies all four factors. Considering the egregious violation of Plaintiff's constitutional rights, significant

[1] The stated purpose for limiting jurisdiction was to "avoid unnecessary interference with the executive branch's criminal enforcement authority." *Trump*, 54 F.4th at 697. That purpose is inapplicable here, as there is no criminal action against Plaintiff. Foreclosing Rule 41(g) relief to Plaintiff would not interfere with any criminal enforcement. Rather, it would foreclose any opportunity for relief from the government's unlawful seizure and extraction of Plaintiff's phone data.

invasion of privacy and confidentiality, and absence of any civil or criminal proceeding, this Court has equitable jurisdiction over Plaintiff's motion.

**A. By discriminating and retaliating against Plaintiff for his public criticism of the Trump administration, Defendant exhibited a callous disregard for Plaintiff's First and Fourth Amendment rights.**

The first factor—"whether the government displayed a callous disregard for the plaintiff's constitutional rights"—is the most important one. *Trump*, 54 F.4th at 698 ("Whether that sort of violation has occurred is the 'foremost consideration' for a court when deciding whether it may exercise its equitable jurisdiction in this context.") (quoting *United States v. Chapman*, 559 F.2d 402, 406 (5th Cir. 1977)). Because Defendant detained Plaintiff, seized his phone, and extracted its data due to Plaintiff's protected political speech, Defendant's seizure violated the First and Fourth Amendments. Their seizure and continued retention of Plaintiff's private and privileged data illustrate a callous disregard for Plaintiff's clearly established constitutional rights.

**i. First Amendment**

**a) Defendant's seizure of Plaintiff's phone and continued retention of its data constitutes unconstitutional viewpoint discrimination.**

The First Amendment prohibits the restriction of speech based on "the specific motivating ideology or the opinion or perspective of the speaker." *Reed v. Town of Gilbert*, 576 U.S. 155, 168 (2015). The test for viewpoint discrimination is whether the government has "singled out a subset of messages for disfavor based on the views expressed." *Matal v. Tam*, 582 U.S. 218, 221 (2017) (Kennedy, Ginsburg, Sotomayor, and Kagan, JJ., concurrence) (citing *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 806 (1985) ("[T]he government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject.")). "Viewpoint discrimination is thus the greatest First

Amendment sin," *Moms for Liberty – Brevard Cnty., FL v. Brevard Pub. Schs.*, 118 F.4th 1324, 1332 (11th Cir. 2024), and "likely even invalid per se." *Honeyfund.com Inc. v. Governor, Florida*, 94 F.4th 1272, 1278 (11th Cir. 2024). Defendant's actions targeted and punished Plaintiff because of his political opinions, in blatant violation of the First Amendment.

Plaintiff's political advocacy constitutes constitutionally-protected speech. *NAACP v. Button*, 371 U.S. 415, 429-31 (1963) (invalidating VA law that violated NAACP's First Amendment rights to free speech and association, as applied through the 14th Amendment). Plaintiff is a vocal critic of the Trump Administration and for more than 10 years has worked on immigrants' rights and detention issues. He regularly posts his political opinions on social media to more than 118,000 followers and contributes to local and national news outlets.

Plaintiff also maintains First Amendment protection in his associations. *Perry v. Sindermann*, 408 U.S. 593, 597-98 (1972); *Afr. People's Educ. & Def. Fund, Inc. v. Pinellas Cnty*, 184 F.4th 1194, 120 (11th Cir. 2026) ("The right to association has been characterized as a right 'implicit' in the First Amendment.") (cleaned up); *cf. Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1240 (11th Cir. 2018) (holding that providing meals to unhoused people constituted protected expressive conduct). Plaintiff is a Policy Consultant at FLIC. In this role, Plaintiff participates in several immigrants' rights coalitions and community groups. He supports undocumented immigrants, including people in immigration detention facilities and their families. At FLIC, he regularly engages with attorneys representing FLIC or FLIC members in litigation.

On September 6, 2026, Defendant had no lawful reason to seize Plaintiff or his cell phone yet nevertheless targeted him because of his political opinions and associations. Plaintiff had

already been flagged because of his policy advocacy and immigrants' rights group associations: the CBP kiosk flagged Plaintiff's U.S. passport. In response, CBP agents detained and questioned Plaintiff, seizing his cell phone and extracting its data. Because of his political advocacy, associations, and reading materials, Defendant targeted Plaintiff for secondary inspection, questioning him about his belongings and his profession, and ultimately copied his phone data. By doing so, Defendant discriminated against Plaintiff and thereby callously disregarded his First Amendment rights.

**b) Defendant's seizure of Plaintiff's phone and continued retention of its data constitutes unlawful retaliation.**

Defendant's actions likewise constituted unlawful retaliation based on protected speech. "[T]he First Amendment prohibits government officials from relying on the threat of legal sanctions and other means of coercion . . . to achieve the suppression of disfavored speech[,]" *NRA v. Vullo*, 602 U.S. 175, 189 (2024), and bans punishment based on the choice to associate with others for "political, social, economic, educational, religious, and cultural ends." *Ams. For Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021) (internal quotation omitted). First Amendment retaliation exists when a plaintiff engages in protected speech, then suffers adverse conduct caused by the defendant that would "deter a person of ordinary firmness" from engaging in that speech. *Afr. People's Educ. & Def. Fund, Inc.*, 184 F.4th at 1202; *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005).

Defendant took adverse actions against Plaintiff based on his protected speech by subjecting him to secondary inspection and seizing and copying his sensitive, confidential, and privileged phone data. There exist no "non-retaliatory grounds . . . []sufficient to provoke" Defendant's actions. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). Plaintiff suffered the seizure

and extraction of his data, potentially exposing his clients, colleagues, and legal associates, plus their statements and work products, to unlawful government scrutiny. The Court may therefore infer that these actions were guided by a "forbidden motive," illustrating that Defendant unlawfully retaliated against Plaintiff in violation of the First Amendment. *Id.* Their retaliation evidences a callous disregard for Plaintiff's First Amendment rights.

**ii. Defendant's retaliatory seizure of Plaintiff's phone violated the Fourth Amendment.**

Defendant cannot justify its seizure of Plaintiff's cell phone data, since it was motivated by unlawful discriminatory and retaliatory intent. Despite any reduced expectation of privacy at the border, Defendant may not violate the constitution when conducting a seizure. *Cf. Ziglar v. Abbasi*, 582 U.S. 120, 143 (2017) ("[N]ational-security concerns must not become a talisman used to ward off inconvenient claims[.]") (internal quotation and citation omitted); *Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 599 (5th Cir. 2021) (district court erred by concluding that the government did not callously disregard the plaintiff's rights simply by obtaining a search warrant prior to seizing privileged materials); *but see United States v. Touset*, 890 F.3d 1227, 1234 (11th Cir. 2018) (reasonable suspicion not required at the border). A seizure that violates the First Amendment cannot be acceptable under the Fourth Amendment. Defendant questioned Plaintiff about his political reading material and his professional political associations. Even without a required showing of reasonable suspicion, Defendant cannot seize a U.S. citizen based on his politics. Their forbidden motive demonstrates their callous disregard for Plaintiff's Fourth Amendment rights.

**B. Plaintiff has an undeniable interest in his sensitive, confidential, and privileged cell phone data and will continue to suffer irreparable harm until it's returned or destroyed.**

Factors two and three analyze whether Plaintiff has a clear need and interest in the information he seeks and whether he will suffer irreparable harm if Defendant does not return his data. *Trump*, 54 F.4th at 697 (quoting *Richey*, 515 F.2d at 1243-44). Plaintiff easily satisfies these factors. Plaintiff's phone contains his work on CJP and FLIC lawsuits, which is protected under the attorney work-product doctrine. *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, 519 F. Supp. 3d 1184, 1200-01 (S.D. Fla. 2021) (defining and explaining the work product privilege doctrine). His conversations coordinating legal support and speaking to potential plaintiffs on behalf of counsel constitute privileged attorney-client communications. *United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir. 1976) (attorney-client privilege extends to agents of the attorney); *United States v. Patel*, 509 F. Supp. 3d 1334, 1339-40 (S.D. Fla. 2020) (privilege protects communications between client and agents of attorney "for the purpose of obtaining . . . legal assistance"). Plaintiff's possessory interest in the data from his phone cannot be disputed. Plaintiff's privacy interest in privileged materials "weighs heavily in favor of granting Rule 41(g) relief" and the government's retention of privileged materials may constitute "an irreparable injury that can be cured only by Rule 41(g) relief." *Harbor Healthcare Sys., LP*, 5 F.4th at 600 (holding that district court abused its discretion in denying plaintiff's Rule 41(g) motion and plaintiff had satisfied the four-factor test regarding attorney-client privileged materials).

Critically, Plaintiff's harm persists as long as Defendant maintains his phone data. *Id*. ("The government's ongoing intrusion on Harbor's privacy constitutes an irreparable injury that can be cured only by Rule 41(g) relief. Harbor remains injured as long as the government retains its

privileged documents."). This ongoing harm extends to the clients for whom Plaintiff has coordinated legal support and the colleagues with whom Plaintiff has worked on litigation, organizing, and policy campaigns, both in his personal and professional capacity. *See United States v. Cooper*, 485 F. App'x 411, 414 (11th Cir. 2012) (harm from unlawful search and seizure extends not just to owner but also to those with "some lesser property interest such as a possessory interest"). What's more, the longer Defendant retains Plaintiff's phone data, the greater the likelihood they will review his privileged documents. "Once the government improperly reviews privileged materials, the damage to the [property owners'] interests is 'definitive and complete.'" *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1247 (11th Cir. 2021) (quoting *DiBella v. United States*, 369 U.S. 121, 124 (1962)). Plaintiff's need is both acute and urgent.

**C. Plaintiff has no adequate remedy at law to address this ongoing harm.**

The fourth factor is whether Plaintiff has an adequate remedy at law for the redress of his grievance. *Trump*, 54 F.4th at 697 (quoting *Richey*, 515 F.2d at 1243-44). He does not. Because of the unique procedural posture in this case—namely the lack of any criminal or civil proceeding—Plaintiff's only remedy is the return or destruction of data pursuant to Rule 41(g). *Harbor Healthcare Sys., LP*, 5 F.4th at 600 (describing the unique equitable relief Rule 41(g) provides, for which a suppression motion in particular is not an adequate remedy).

There is no existing proceeding through which Plaintiff may seek relief. The absence of any criminal search warrant means criminal forfeiture proceedings are unavailable. None of the requirements under 18 U.S.C. § 981(b) have been met such that the seizure could possibly be a civil forfeiture making civil forfeiture proceedings available. The property was not seized by the

Attorney General, Secretary of Treasury, or Postal Service, as required by 18 U.S.C. § 981(b)(1); or under any of the exceptions to the warrant requirement under 18 U.S.C. § 981(b)(2) subsections. Plaintiff has satisfied all four elements required for equitable jurisdiction. Rule 41(g) is the only mechanism for Defendant to return or destroy the sensitive, confidential, and privileged data it has extracted from its unlawful search of Plaintiff's cell phone. The Court must order return or destruction of the data.

## II. Defendant's seizure of Plaintiff's phone and continued retention of its data also violates CBP policy and federal law.

CBP Directive No. 3340-049B, *Border Search of Electronic Devices*, effective January 1, 2026, dictates that Plaintiff's copied data be destroyed or returned to him immediately. Section 5.6.2 states, in pertinent part, "Without probable cause, CBP may retain only information from the border search of an electronic device relating to immigration, customs, and other enforcement matters if such retention is consistent with the applicable system of records notice and subject to the requirements and limitations provided herein and applicable law." No such circumstances exist here. Further, Defendant did not follow the Directive's procedures delineated in Section 5.2 regarding the handling of attorney-client privileged or attorney work product information, after Plaintiff informed CBP agents of the likelihood of privileged material contained on his phone.

In addition to CBP Policy, the Privacy Protection Act ("the PPA") prohibits the government from seeking even a criminal warrant "to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication . . . ." 42 USC § 2000aa(a)(1). It is evident here that in searching and seizing Plaintiff's work product materials, Defendants are also violating the Privacy Protection Act. Plaintiff is a U.S. citizen whose cell

phone was seized and searched without justification or legal authority, absent any criminal proceeding. Per CBP Directive 3340-049B and the PPA, any and all privileged and work product data copied from his phone must be destroyed.

## CONCLUSION

Based on the foregoing, this Court should grant Plaintiffs' Motion and order the government to immediately return or destroy all information and data extracted, copied, or retained from Plaintiffs' device and remotely accessed accounts. If the Court determines that a hearing is necessary or would aid the Court's determination, Plaintiff respectfully requests that this Court schedule an expedited hearing at the earliest possible date.

Dated: September 24, 2026

Respectfully submitted,

*For Plaintiff:*

/s/ Amanda Carlin
Amanda Carlin *
Just Futures Law
1629 K Street, NW, Suite 300
Washington, D.C. 20006
Telephone: (218) 218-9768
amanda@justfutureslaw.org
* *Pro hac vice motion forthcoming*

/s/ Miriam Haskell
Miriam Fahsi Haskell (FBN 69033)
Adam C. Saper (FBN 111750)
Community Justice Project
3000 Biscayne Boulevard, Suite 106
Miami, FL 33137
Telephone: (305) 907-7697
adam@communityjusticeproject.com
miriam@communityjusticeproject.com